## BENNETT *v.* LINGHAM.[1]

### (*District Court, E. D. New York.* May 27, 1887.)

CHARTER-PARTY—TIME OF SAILING—BREACH—PREVIOUS ACQUIESCENCE—LIA-
BILITY.
  Defendant agreed to ship cattle by the steamer N. H., "sailing from New
York about the middle of September." The vessel was at sea when the con-
tract was made. On September 14th defendant inquired the steamer's prob-
able sailing day, and was told, about September 27th, to which he made no ob-
jection. On September 22d, the defendant, being notified that the steamer
would sail on the 29th, declined to ship cattle by her, on the ground that his
contract did not require him to ship at so late a day. *Held*, that the ship hav-
ing construed the indefinite phrase, "about the middle of September," to
mean as late as the twenty-seventh of the month, and defendant having ac-
quiesced therein, and that, too, on a day before the middle of September, it
was not open to the defendant to say that a tender on the 29th was not a com-
pliance with the contract. His refusal to ship was therefore a breach of the
contract.

In Admiralty.
*Ullo, Ruebsamen & Hubbe*, for libelant.
*Butler, Stillman & Hubbard*, for respondent.

BENEDICT, J. This action is brought by the owners of the steamer
Notting Hill to recover damages of the defendant for an alleged breach
of a live-stock freight contract, made by the defendant, whereby he
agreed to ship on the said steamer about 460 head of cattle, to be trans-
ported in said vessel from New York to Deptford, at a price named.
The contract was in writing, and was made in New York on the eleventh
of August, 1883, at which time the steamer was upon a voyage from
New York to London and back. The contract, when designating the
steamer in which the cattle were to be transported, adds to the steamer's
name the words, "sailing from New York about the middle of Septem-
ber."

The steamer was unable to get back to New York before September
22d. On September 22d the defendant was notified that the steamer
would be ready to sail on the 29th, but declined to ship cattle by her,
upon the ground that his contract did not require him to ship at so late
a day. I should have been inclined to support the defendant in this re-
fusal were it not for the additional fact that on the fourteenth day of
September, in answer to the defendant's inquiry as to the date on which
the steamer left London, and also "her probable date of sailing from
New York," was informed by telegraph that she had sailed from London
on the sixth of September, and would be dispatched from New York
about September 27th, and he then made no objection of any kind to
shipping his cattle on her.

The phrase in the contract, "about the middle of September," is in-
definite. It has no definite meaning in the trade. In this instance it

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

was construed by the ship to cover a day as late as September 27th. This construction was made known to the defendant on September 14th, and he then made no objection to that construction. After this interpretation of the indefinite phrase, "about the middle of September," acquiesced in by the defendant, and that, too, on the day before the middle of September, it was not open to the defendant to say that a tender of the ship on the twenty-ninth of September was not a compliance with the contract. The defendant's refusal to ship cattle on the steam-ship was therefore a breach of the contract on his part, and he is liable for the damages resulting therefrom.