## STREET *et al. v.* THE PROGRESSO.[1]

*(District Court, E. D. Pennsylvania.* April 22, 1890.)

**CHARTER-PARTY—CANCELLATION—CONDITIONS—QUARANTINE REGULATIONS.**

A charter-party provided that a vessel should proceed with all convenient speed to Charleston, S. C., or as near thereto as she safely could and discharge, should load there, and proceed to Liverpool. Should she not arrive at port of lading on or before October 1, 1888, the charterer to have the option of cancelling the charter, to be declared when the vessel was ready to load; the act of God, princes, or rulers of the people, etc., excepted. *Held,* that quarantine regulations of Charleston, preventing the entering of vessels into that port before November 1st, were within the exceptions of the charter-party. *Held, further,* that the vessel was bound to go to Charleston as soon as she reasonably could after November 1st, so that the charterers could exercise the option of canceling the contract then and there, and that she could not require the charterers to exercise that option at any other place; and that, having failed to proceed to Charleston, she must respond in damages.

Libel in Admiralty to Recover Damages for Breach of a Charter-Party.

*A. Sydney Biddle,* for libelants.

*Alfred Driver, J. Warren Coulston,* and *Robt. D. Benedict,* for respondent.

BUTLER, J. This case (being presented immediately before the April term of the circuit court) I must dispose of with little more than a statement of the facts, and my conclusion from them. On the 31st of August, 1888, the libelants and respondent entered into a charter-party, the material provisions of which are as follows: The respondent, reserving liberty to take outward cargo from Cuba to the United States, shall proceed with all convenient speed to Charleston, S. C., or as near thereto as she safely can; and, having discharged her cargo, shall load from charterer's agents, at such wharf or dock as they direct, a cargo of cotton or other merchandise, and proceed therewith to Liverpool or Bremen, as may be ordered, and on arriving there deliver the same on payment of the freight named. "Should she not arrive at the port of lading on or before October 1st, 1888, the charterer shall have the option of canceling the charter, to be declared when the vessel is ready to load." "The act of God, the queen's enemies, fire, epidemic, strike, or lock-out of stevedore's men, stoppage, or destruction of goods on railways, or at press, restraint of princes or rulers of people, collision, any act of neglect or default whatsoever of pilot, master, or crew in the management or navigation of the ship, and all other dangers or accidents of the seas, rivers, and steam navigation, throughout this whole charter-party being excepted." The respondent loaded sugar at Havanna, and came thence to the Delaware breakwater, *en route* to Philadelphia. Reaching the breakwater September 3d, she was detained part of a day at quarantine, and subsequently several days at the Lazaretto, below Philadelphia, reaching the latter place September 10th. She then received information of quarantine regulations at Charleston, which stood in the way of entering. On communicating with the libelants, she was in-

[1] Reported by C. Berkeley Taylor, Esq., of the Philadelphia bar.

formed that entrance could not be made before November 1st, or, rather, that the quarantine regulations there would stop all vessels attempting to enter before that date; whereupon she went to New York for repairs. After further correspondence with libelants, and unsuccessful efforts to obtain cargo for a short intermediate voyage, she contracted to take a cargo of cotton from Norfolk, Va., to Bremen. Loading this cargo, she arrived at Bremen, November 6, 1888. Unloading there, she went to Hamburg, obtained a return cargo, and arrived at Boston, December 19, 1888. On this day she applied to the libelants to exercise their option under the charter, by declaring whether they would load her at Charleston; to which they replied that their charter rights were claimed, and would be insisted on. She then declined to go to Charleston.

The question presented by these facts is new and important. That it should not have arisen and been decided long ago, is remarkable. The terms of the charter are not unusual, and vessels have frequently been detained at quarantine, or driven off by the fear of such detention, under similar circumstances; yet the industry of counsel has not discovered a reported case, in this or any other country, in which the question has been presented. Numerous cases arising on contracts of insurance, and some others involving kindred subjects, have been found, which shed some light on the subject, though not much. These cases are cited in the briefs, and need not be further noticed. The question must be determined by the contract, its language and spirit, without the aid of direct authority. There is no controversy about material facts. The respondent would have been detained at quarantine had she proceeded on her voyage to Charleston before November 1st. How long she would have been detained is uncertain; possibly for a few days only. I assume, however, that it would have been until November 1st.

The libelants contend that she was bound to resume her voyage, and go there whenever she could, and that she certainly could at the date last named. On the other hand, she contends that she was not required to go at all, if "restrained by princes, rulers, or people," and that she was so restrained; and, further, she claims that, if this position is not sound, and the contract still bound her, she complied with it by the tender at Boston. What was her obligation? She bound herself to go to Charleston, with convenient speed, subject only to the exceptions stated. Among the several things which might relieve her from compliance were "restraint by princes, rulers, or people." I entertain no doubt that detention at quarantine, or being kept off by the certainty of detention if she proceeded, is covered by this language, nor that such detention excuses failure to arrive at the time specified. But did it justify an abandonment of the contract? I do not think so. To give it this effect, I must hold that such detention for one day or less, has the same result; or that "fire, strike, or lockout of stevedore's men, draymen," and all other causes of interference excepted from the contract, however slight, or of however short duration, would be attended with the same fatal consequences to the charter. The language must receive a reasonable construction,—such as tends to promote the objects of

the parties. It would be as unreasonable to hold that the respondent, so restrained for a brief period, was relieved from her obligation, as to hold that she was bound by it to resume her voyage whenever the restraint terminated, though years may have elapsed, and the circumstances of the parties so changed, that the reasons or objects which led to the contract no longer existed. Neither position is consistent with a just construction of the charter. So long as the circumstances remained substantially unchanged,—the delay, being no greater than might reasonably have been contemplated,—the contract remained in force. The month which elapsed made no material change. The respondent was still engaged in carrying merchandise, and able to keep her engagements; and the libelants still had merchandise to carry. She bound herself to go to Charleston and carry it, if she could get there within a reasonable time,—a time that answered the purpose for which she contracted to go. The exception was intended to protect her against the consequences of delay. It was not designed to work an abrogation of the contract, unless the restraint should be virtually permanent. It was not of this character. She was not prevented going, but simply delayed, and the delay was not such as to defeat the purpose of the parties. I have not time to pursue the subject further, nor would it be profitable to do so, if I had.

Did she discharge her obligation by the offer of performance at Boston, if libelants would then promise cargo? I do not think so. They were not required to exercise their option until she reached the port of lading, "and was ready to load." This was a right secured by the contract. How could they be deprived of it by the request? If the contract was still in force, as I have found, she was bound to proceed to Charleston, leaving the libelants to exercise their option when she "was ready to load." Her learned counsel think she had an equitable right to call for the exercise of it in advance. There is no principle of equity, however, which can be invoked in her favor. Her express contract was otherwise, and equity never relieves against the terms of a contract (sued upon) except for fraud, accident, or mistake. A party needs no relief from an obligation which he has voluntarily assumed.

As already stated, the restraint excused her from the consequences of delay prior to November 1st, when it was removed. Did it excuse the further delay which occurred prior to December 19th? This question may be unimportant. It relates only to the extent of damages recoverable. If the libelants' loss was enhanced by the additional delay, the question is important; otherwise it is not. It must nevertheless be settled now, as a guide to the commissioner who will pass upon the subject of damages. The respondent was not required to lie idle while the restraint lasted. She might employ her time, but she could not do so at the libelants' expense, or in disregard of their interests. It is quite as unreasonable that they should bear the loss of non-compliance after November 1st as that she should suffer the disadvantage of idleness. She bound herself to be at Charleston as early as she could get there, under the circumstances stated in the charter, using "convenient speed," and

for any failure after November 1st, she must be held responsible.—While the conclusions above stated are satisfactory to me, I appreciate and feel the force of the able argument presented by respondent's counsel. The case is not free from difficulty, and I am glad that my judgment is not final.