## THE SAMUEL W. HALL.

### HALL v. KELLY.

*(District Court, S. D. New York. January 30, 1892.)*

1. SHIPPING—CHARTER-PARTY—OPTION TO REJECT VESSEL—WHERE EXERCISED.
   Upon charters for loading the ship in remote places across the seas, options providing for the acceptance or rejection of the charter are to be exercised at the place where the ship is to load, and the ship has no right to call upon the charterer to exercise his option elsewhere.

2. SAME—NON-ARRIVAL AT PORT OF TRADE BY SPECIFIED DATE.
   A charter of a vessel from Macoris to the United States stated that the charterer was to have option of canceling charter if vessel had not arrived at Macoris on or before June 20, 1891. On June 22d, the vessel still being at Guadaloupe, her master telegraphed to his agents at Philadelphia asking whether he should go to Macoris. They consulted the charterer in New York, and, no release of the charter being obtained, the vessel proceeded to Macoris, arriving there July 1st to find her cargo had been shipped on another vessel. On suit brought to recover damages for non-fulfillment of the charter, *held*, that the ship took the risk of not finding the cargo after the appointed day, and could not recover in this suit.

In Admiralty. Suit by John W. Hall against Hugh Kelly for damages in failing to load vessel under a charter. Decree for defendant.

*Wilcox, Adams & Green,* for libelant.

*George A. Black,* for respondent.

BROWN, District Judge. On the 9th of April, 1891, by a charter-party made between the defendant and Thomas Mumford, master of the schooner Samuel W. Hall, then lying at Philadelphia, the vessel was chartered for a voyage from Macoris, San Domingo, with a cargo of sugar, to the breakwater for orders, and to discharge between Hatteras and Boston. The charter stated:

"It is understood vessel loads lumber at Bucksville for Guadaloupe and when discharged there it is to proceed to Macoris to enter upon this charter. * * * The charterers to have option of canceling charter if vessel not arrived at Macoris on or before June 20th, 1891."

On the 22d of June, the schooner being still at Guadaloupe, her master telegraphed to her agents in Philadelphia to ascertain whether she should proceed to Macoris, and not obtaining any release of her charter obligations, she proceeded thither. She sailed from Guadaloupe on the 28th of June, arrived at Macoris on the 1st of July, and on reporting to Mr. Mellor, the defendant's correspondent there, was informed that the cargo designed for the Hall had been shipped on the 26th of June on board another vessel; and that he had no cargo for her. The master thereupon proceeded to Turk's island, where he obtained a cargo of salt for Providence, R. I.; and thereafter filed this libel for $621 alleged damages for the refusal to load the cargo of sugar at Macoris.

I cannot sustain the libelant's claim. The charter was in fact made for account of Mr. Mellor, who had a sugar plantation at Macoris, and had been accustomed to obtain through the defendant charters of vessels to come thither for his products. The present charter, however, did not

state that it was for account of Mr. Mellor; but though Mr. Beattie in his conversation with the defendant on the 23d of June, had sufficient notice that the charter was for account of the defendant's "friends" at Macoris, I regard even this fact as immaterial, and should decide in the same manner if the charter had been on defendant's own account and he had intended to load the vessel with his own sugar at Macoris. The covenant of the charter-party was that the vessel should go "to Macoris to enter on the charter." If she did not arrive there by the 20th of June, the defendant had the option to refuse to load. Upon such charters for loading at remote places across the seas, it has always been the law that the option provided for was to be exercised at the place where the ship was to load. Whoever represents the charterer there is the person to exercise the option. There has been no question as to the law upon this point since the decision of Lord MANSFIELD in *Shubrick* v. *Salmond*, 3 Burrows, 1637. In that case, it is true, the terms of the charter-party indicated more explicitly than in this case that the option was to be exercised after the ship's arrival. But no stress is laid upon this circumstance in the decision, the ground of which was that the ship had covenanted to go there at all events; that the ship thereby became the "insurer of the risk" of getting there before the time specified, in which event she was sure of a freight; but still had a general *chance* of getting a freight even though she should not arrive until after that time. The pleadings in that case admitted that the ship failed to arrive at the time appointed, "through contrary winds and bad weather."

The whole object of such a stipulation is to relieve the charterer of the necessity of holding back his cargo beyond a fixed date for the ship's benefit, if other means of forwarding it are at hand; while the ship, unless relieved, remains bound to go forward and take the risk of any shipment before her arrival. In the present case the vessel had no right, before reaching Macoris, to call upon the defendant to exercise his charter option at New York; nor does the evidence indicate that any such call was understood or intended to be made. From the nature of the case any such call would be unreasonable, both because at such a distance the charterer in New York could not keep informed of all the circumstances at such a place as Macoris; and also because the ship had still a voyage to make in order to reach Macoris. Whether, if she sailed, she would ever reach there, and the time when, if ever, would depend on the contingencies of the voyage; and the charterer was not required to take any of these risks. No doubt the charterer, when informed that the vessel could not arrive at the time appointed, might, if he chose, make a new agreement, or absolve the ship from the charter; but he was under no obligations to do so, or to relieve the ship from any of the risks she had assumed by the charter. Communication with Macoris was slow. A telegram and reply required from five to seven days. Even had telegraphic communication been much easier; the defendant was under no obligation to keep in telegraphic communication with Macoris for the ship's benefit, and merely to enable him to answer instantly her inquiries at New York, rather than at Macoris, the proper place.

When the defendant was applied to in New York to know whether the ship should proceed or not, it is manifest from the letter written by Mr. Beattie, and from Mr. Beattie's testimony as well as Mr. Kelly's, that the latter declined to exercise any option in the matter; that Mr. Beattie understood that this option must be exercised at Macoris, where the vessel was to be loaded; that Mr. Kelly had no positive information; but as he had no advices of shipment on any different vessel, he thought the *chances* were very strong that "his friends" at Macoris would not have loaded the cargo on another vessel, because there were not many vessels there. Even Mr. Beattie's testimony is wholly inconsistent with the idea that Mr. Kelly intended at that interview to exercise any option under the charter; plainly he left the option to the parties at Macoris, stating only his impressions of the chances.

The letter written by Mr. Beattie, of which so much is made by the libelant, was not competent evidence except in so far as admitted by the libelant in subsequent interviews with him; but it is plain that the defendant never admitted the exactness and completeness of Mr. Beattie's version of the interview. On the contrary, in his interview with Mr. Beattie, his friend, the defendant complained that the letter had brought him into trouble, and that Mr. Beattie might have expressed himself differently. As between friends who had no wish to quarrel, this means much; but Mr. Beattie's own testimony shows that the defendant had no precise information of the facts at Macoris, and only spoke of the great *chances* that the vessel would get the cargo; and that there was no idea that Mr. Kelly was exercising his charter option. Mr. Beattie did not inquire who were the parties at Macoris, nor propose telegraphic inquiries there; evidently because communication was slow, and he supposed the vessel was *ready to sail at once*. The substance and effect of the interview were that in the absence of exact information, there was no help for the vessel but to proceed to Macoris, as the charter required, and take the chances. In this sense the letter of Beattie was substantially correct. In such a reply to Beattie's inquiries the defendant was acting strictly within his legal rights, and, under the circumstances shown, without any violation of the slightest equitable right of the ship.

The conduct of the master of the ship, on the contrary, was most reprehensible in its disregard of the interests of the charterers. He knew from a week to 10 days before the 20th of June that he could not be at Macoris on the 20th, the time required by the charter. Fairness, as well as reasonable prudence on the ship's account, required him, if he did not wish to take all chances, to notify the charterers at once. He waited until two days after the time appointed; and when he telegraphed to his own agents, it was without notice to them that the ship was not even then ready to sail; and she did not sail until five days afterwards.

The evidence shows nothing to relieve the vessel from the obligations which she assumed by the charter, and the risk of finding the cargo gone if she arrived after the 20th. Decree for the defendant with costs.