KARRAN v. PEABODY et al.

(Circuit Court of Appeals, Second Circuit.    March 14, 1906.)

No. 137.

1. SHIPPING—CHARTER PARTY—OPTION TO CANCEL.
    A general provision in a charter party, excepting "all and every the
dangers and accidents of the seas," has no application to a prior specific
provision giving the charterers the right to cancel should the vessel not
arrive in good order at the port of loading on or before a specified date,
so as to· extend such date in case arrival is delayed by sea perils.
    [Ed. Note.—Cancellation, surrender, or rescission of charter of vessel,
see note to McNear v. Leblond, 61 C. C. A. 569.]

2. SAME—TIME FOR EXERCISING—WAIVER.
    A charterer, given the right by the charter party to cancel in case the
vessel does not arrive at the loading port by a specified date, is not re-
quired to exercise his option until her arrival, and his right to cancel
is not lost by his refusal to state his election on request of the owners.
after such date had passed, and when the vessel was in a distant port,
and the time when she would arrive was unknown.

Appeal from the District Court of the United States for the South-
ern District of New York.

On appeal from a decree of the District Court for the Southern
District, sustaining exceptions and dismissing the libel filed by the
owner of the ship Macdiarmid, to recover damages for an alleged
breach by the charterers, appellees herein, of a charter party of said
ship, dated September 22, 1902.

A. Hickox, for appellant.
Charles C. Burlingham, for appellees.

Before LACOMBE and COXE, Circuit Judges.

COXE, Circuit Judge.    The principal controversy arises over the
following clause of the charter party:

"Should the vessel not arrive at New York in good order on or before sun-
set February 1st, 1903, charterers have the option of canceling the charter."

The vessel did not arrive in New York until March 3d, a month
later, when the charterers declined to load her.

It is manifest that if nothing had occurred between the parties prior
to the arrival of the vessel in New York the charterers' right to cancel
on March 3d would be unquestioned.    But the libel alleges that "while
on her way to the port of New York, the vessel was obliged by stress
of weather and perils of the sea to put into the port of Barbadoes,
where she arrived about February 12th, 1903."    It is further alleged
that on February 13th a cable was sent to appellees by the agents of
the appellant asking, "Do you want to cancel?" and on the same day
the following reply was received:    "Charterers refuse to say at pres-
ent if they cancel or not."    On February 14th a second cable was sent
insisting upon a definite answer to the appellant's question and the
reply of the appellees was a duplicate of the cable sent the day pre-
vious.    So that on February 13th the appellees, knowing that the

Macdiarmid was at the Barbadoes, declined to say whether, if she arrived at New York, they would take her or not.

It is argued that the clause quoted, giving the charterers an option to cancel after February 1st, is qualified by a subsequent provision excepting "all and every the dangers and accidents of the seas." The appellant construes this language to mean that the charterers were to have the option of canceling the charter if the ship failed to arrive at the loading port by February 1st unless her arrival were prevented by the perils of the sea. He insists further that the libel alleges and the exceptions admit that her arrival was prevented from this cause.

We are unable to accede to either proposition. Although the provision excepting the "dangers of the seas," etc., follows the clause giving the charterers the option of canceling, it has no relation whatever to that clause so far as extending the canceling date is concerned. It is no part of the printed charter blank but was stamped in subsequently and follows the option clause for no other reason, apparently, than that this was the most convenient place to insert it. The date after which the option to cancel may be exercised is fixed and unqualified. If the vessel fails to reach New York by February 1st the charterers need not take. her unless they wish to do so. If the appellant's construction be correct the Macdiarmid, after being shipwrecked for a year in Arctic seas, might, in February, 1904, have sailed into the part of New York and compelled the appellees to load her.

In Smith v. Dart & Son, L. R. 14 Q. B. Div. 105, Mr. Justice Mathew said:

"It is clear that the clause giving the option would be practically struck out of the charter if it were to be construed 'the vessel must be ready to load by the 15th unless prevented by dangers of the sea.' "

Mr. Justice Smith, concurring, used the following language:

"The ship owner does not contract to get there by a certain day but says 'If I do not get there you may cancel,' it is an absolute agreement that if he does not get there the charterers may cancel."

But were the law as contended for by appellant he could not succeed for the reason that there is no allegation, and, therefore, no admission, that the vessel was prevented by perils of the sea from arriving in New York on or before February 1st, 1903. The only averment of the libel bearing on the subject, quoted supra, is very far from an assertion that she was prevented by a sea peril from arriving in New York. How a storm at the Barbadoes on February 12th prevented the vessel from arriving at New York on February 1st it is difficult for the court to understand. The only inference to be drawn from the libel is that on February 1st she was so far distant from New York that her arrival there on that date was impossible and there is absolutely no averment from which it can be inferred that this condition was brought about by perils of the sea.

The only question, therefore, is whether the refusal of the charterers to exercise their option of cancellation on February 14th was a waiver of their right to do so subsequently.

Were we in the forum of ethics much might be said in criticism of the appellees' conduct; undoubtedly it was harsh, discourteous and inconsiderate, but we are permitted to consider the situation only in its strict legal aspects; the golden rule is not one of the rules in admiralty. That the charterers were justified in insisting upon the performance of the charter according to its strict letter cannot be successfully disputed.

The libel demands damages "owing to the fall in charter rates of hire." Parties to these agreements undoubtedly take into consideration the fluctuation in ocean freights and contract in reference thereto. It is a risk which they assume. If, in the present case, the charter rates had risen the cancellation of the charter would have been advantageous to the appellant.

When the charterers were asked to exercise their option the vessel was at the Barbadoes and they had no means of knowing when she would arrive in New York or what would be the state of the market when she did arrive. The charter might then be very valuable and it might not—they could not tell. Certainly they could not be compelled in advance to relinquish a right which might be of great value.

Owners need not charter their vessels with the option clause inserted unless they wish to do so. Having done so, however, they should abide the consequences. The law as understood throughout the commercial world should not be altered or relaxed because of the peculiar hardship of a particular case.

We understand the law to be as contended for by the appellees and although the decisions may not be controlling upon us we regard them as based upon sound reasoning. The rule that the charterer cannot be required to exercise his option to cancel prior to the arrival of the ship at the loading port is so clearly established and well understood, that an attempt at modification is, to say the least, inexpedient.

The case of the Progresso (D. C.) 42 Fed. 229, affirmed 50 Fed. 835, 2 C. C. A. 45, is, we think, directly in point.

The Circuit Court of Appeals, speaking of a canceling option similar to the one at bar, say:

"The obligation of that contract was inviolable. It could neither be altered nor amended save by mutual consent of the parties interested. The demand made on behalf of the ship while she was lying in the port of Boston upon the charterers, to declare, then and there, their option, was wholly unwarranted by the contract. To have yielded to such demand, and to have declared their option, would have been an assent by them to a material and substantial alteration of the contract in an important particular. They were clearly justified in refusing such assent, and in standing by the terms of the charter party. That charter party was still in force, and the only legitimate act for the ship was to proceed under it to Charleston, and tender herself, on arrival, ready to load. Nothing short of that would excuse."

The foregoing is, we think, a clear exposition of the law and fully coincides with our views.

See, also, The Samuel W. Hall (D. C.) 49 Fed. 281; Carver on Carriage by Sea, § 222.

The decree is affirmed.