SANDAY et al. v. UNITED STATES SHIP-PING BOARD EMERGENCY FLEET CORPORATION.

(District Court, S. D. New York. June 10, 1924.)

1. Shipping ⬅➤43—Owner required to send ship to loading port, though it is obvious that she cannot arrive before cancellation date.

Shipowner is bound to send ship to loading port, even if it is obvious that she cannot arrive there before cancellation date, and charterer cannot be compelled to say how he will exercise option until such date.

2. Shipping ⬅➤43 — Charterer, who exercises option to load, entitled to damages on failure of vessel to proceed to loading port.

Charterer, who exercises option to load notwithstanding delay, may recover damages against shipowner for breach of obligation to carry, on failure of vessel to proceed to loading port.

3. Shipping ⬅➤43—Charterer held not entitled to damages in addition to cancellation for delay.

Charter party, merely giving charterer right of cancellation on failure of vessel to reach loading port on or before certain date, does not entitle charterer, in addition to cancellation, to recover damages.

In Admiralty. Libel by Samuel Sanday and others, copartners trading under the firm name of Sanday & Co., against the United States Shipping Board Emergency Fleet Corporation. Libel dismissed.

Duncan & Mount and Russell T. Mount, all of New York City, for libelants.

William Hayward, U. S. Atty., and Horace T. Atkins, both of New York City, for respondent.

WARD, Circuit Judge. The parties have stipulated that there was an oral charter between Sanday & Co., the libelants, and the United States Shipping Board Emergency Fleet Corporation for a steamer to carry a cargo of wheat from Galveston to Rio de Janeiro, which necessarily implies that their minds met on all the essentials of the charter.

November 6, 1920, the respondent declared the steamer Afel under the charter party "November 15 canceling," which, in view of all the facts, clearly meant that the charterers were to have the option of canceling if the Afel did not arrive at Galveston, the loading port, on or before November 15. In point of fact she arrived on the afternoon of November 18. The libelants canceled the charter and brought this suit to recover their damages.

The question of law is whether, beside the right of cancellation, the libelants have a right to recover damages for breach of the charter party. It is singular that no authority on this point has been discovered. The respondent takes the position that, if the shipowner covenants that his ship shall be at the loading port on or before a certain date, and also gives the charterer the option of canceling if she do not, then the charterer may cancel by virtue of the option, and also recover damages for breach of charter. On the other hand, if the charter simply gives the charterer the right of cancellation, then that expresses his entire right, and he cannot recover damages, because the owner has not agreed that the ship shall be at the loading port on or before the date fixed, and has therefore not breached the charter party.

The libelants, on the other hand, contend that a promise by the shipowner to have the

ship at the loading port on or before the cancellation date is to be implied from the option of cancellation.

In Hasler v. West India S. S. Co., 212 Fed. 862, 129 C. C. A. 382, the owner brought suit against the charterer for failure to load. Rogers, J., said:

"It is our understanding that under a charter party if the ship is not at the loading port, its duty is to proceed there with reasonable diligence, and if she fails to arrive by the designated time the charterer may refuse to load her and may also have his action for damages, unless the delay was occasioned by excepted perils. But in the case under consideration the action for damages is not brought by the charterer, although the ship made no attempt to reach the designated port. Here the action is brought by the shipowners, and as they did not comply with the terms of their contract and do not claim that they did the circumstances must be somewhat unusual if they can maintain the suit."

This was obiter, because the charterer was making no claim, but is quite consistent with the court's having in mind a charter party containing, in addition to the option, a covenant that the ship shall be at the loading port on or before the cancellation date.

In Bucknall v. Tatem & Co., 83 Law Times Reports, 121, the charterers asked for an injunction restraining the shipowner from using the ship, except under the charter party, which the court denied, on the ground that, if the owner wrongfully failed to send the vessel to the loading port on or before the cancellation date, the charterer would have an adequate remedy at law for damages—an obviously correct conclusion.

In Smith v. Dart, 5 Asp. Mar. Law Cases, 360, the shipowners brought suit against the charterer for refusal to load because the vessel was not ready to load on or before the loading date. The right of the charterer to recover damages was not involved, but Judge Mathew said in reference to the cancellation clause:

"The clause in question, however, is a clause which imposes on the shipowner no obligation, the enforcement of which could be made the subject of an action, and is therefore distinguishable from another class of clauses, by which a shipowner undertakes to do something which if he fails to do he will be liable to an action for breaking his contract."

And Judge Smith, also referring to the cancellation clause, said:

"The shipowner agrees, and enters into a contract, that it shall be so. He does not, indeed, contract to be there in any event, so as to be liable for damages if he fails to be there; but he does contract that, if he is not there, the charterer is to have the option of canceling the charter party."

It is true that both these observations were obiter, but they were made by very learned and experienced judges.

[1] The shipowner is bound to send his ship to the loading port, even if it is obvious that she cannot arrive there before the cancellation date, and the charterer cannot be compelled to say how he will exercise his option until that date arrives. The Progresso (D. C.) 42 Fed. 229; Id., 50 Fed. 835, 2 C. C. A. 45; Karran v. Peabody, 145 Fed. 166, 76 C. C. A. 136.

[2] If the vessel does not proceed to the loading port, that fact will make no difference to the charterer, if he exercises his option to cancel; if, on the contrary, he exercises his option to load, he will have a right of action for damages against the shipowner for breach of the obligation to carry.

[3] Being quite clear that no covenant on the part of the respondent to have the vessel at Galveston on or before November 15, 1920, can be implied from the cancellation clause, I think the charterers' only right was to cancel.

Libel dismissed.