SANDAY et al. v. UNITED STATES SHIP-PING BOARD EMERGENCY FLEET CORPORATION.*

(Circuit Court of Appeals, Second Circuit. March 2, 1925.)

No. 221.

Shipping ☞38—Charterer held not entitled to damages in addition to cancellation for delay.

A charter of a ship to carry a cargo, giving the charterer the option to cancel if the ship is not ready to leave by a day specified, does not imply a promise by the owner to tender the ship on or before that day, and the charterer, in addition to cancellation, cannot recover damages solely because of the failure to make such tender.

*Certiorari denied 46 S. Ct. 19, 69 L. Ed. ──.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by Samuel Sanday and others against the United States Shipping Board Emergency Fleet Corporation. Decree for respondent, and libelants appeal. Affirmed.

For opinion below, see 1 F.(2d) 390.

Duncan & Mount, of New York City (Russell T. Mount, of New York City, of counsel), for appellants.

William Hayward, U. S. Atty., of New York City (Horace T. Atkins, Sp. Asst. Atty. Gen., of counsel), for appellee.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HAND, Circuit Judge. The libel was for damages arising for the respondent's failure to tender in season a ship under an oral contract of affreightment, in which the libelants were charterers. The contract was made on November 6, 1920, and was stipulated to have been as follows:

"The libelants agreed to ship and the respondent agreed to carry a cargo of 6,000 tons of wheat, 10 per cent. more or less, from Galveston to Rio de Janeiro, by a steamship to be thereafter declared by the respondent. By the terms of the contract the libelant had the right to cancel the contract if the vessel to be declared by the respondent should not be ready to load the said cargo at Galveston on or before November 15, 1920."

The respondent declared no steamer until November 11th, at which time that which it did declare was at Norfolk. It was evident that she could not make the port of Galveston by the 15th, and in fact she was not ready to load her cargo there until the afternoon of the 18th. On the 12th the libelants repudiated the tender and made arrangements for another vessel. For the loss so occasioned they sued, on the theory that the contract bound the respondent to tender a ship on or before the cancellation date.

It is indeed curious, as Judge Ward said in the court below, that this should be a case of first impression, as apparently it is, except for certain obiter remarks of Mathew, J., and Smith, J., in Smith v. Dart, 5 Asp. 310, and in Hasler v. West India S. S. Co., 212 F. 862, 129 C. C. A. 382. One would suppose that, in the multitude of cases which have arisen over charters, some charterer would have sued for a breach under such circumstances as those at bar. Perhaps it is legitimate to suppose, as the books used more

frequently to say in the past, that the absence of any such claim indicates that nobody supposed such an action would lie. At any rate we have no doubt that the learned judge was right and that the libelants have no cause of suit.

When no delivery date is named in a charter, the promise of the owner is to tender with reasonable dispatch, and for a breach of that promise of course the charterer may sue. If he does, he undertakes to show that the owner has not used reasonable dispatch in tendering the ship. We entirely agree that his promise is not affected by the presence of a cancellation clause, and so it appears to have been held in Nelson & Sons v. Dundee East Coast Shipping Co., Limited, 44 Scottish Law Reporter, 661 (1907, Court of Sessions). But that is quite different from saying that the cancellation date ipso facto establishes a promise of the owner to tender the ship on or before the cancellation day or at any other definite time. It seems to us very clear that the language is expressly chosen to avoid such a result, and that, although the owner accepts the hazard of tendering the ship after the cancellation date only to have her refused (The Progresso, 42 F. 229; The Progreso, 50 F. 835, 2 C. C. A. 45; Karran v. Peabody, 145 F. 166, 76 C. C. A. 136 [C. C. A. 2] Smith v. Dart, supra), he does not undertake anything else beyond reasonable dispatch. Such an undertaking must be expressed in a promise to tender by the cancellation date, and that the charterer's option to cancel does not in any sense imply.

We are referred to our language in Hasler v. West India S. S. Co., supra, 863, looking to a contrary conclusion. The case involved nothing of the kind. The owner was suing for a breach without tender, which he asserted to have been excused by the charterer's conduct. Plainly nothing there decided could affect the right of a charterer to sue upon a supposed promise of the owner. At most the language relied upon was obiter, and if it must be construed as including a charter in which the owner makes no promise, except so far as is to be implied from an option to cancel, it must be regarded as inadvertent. Such contracts are drawn with care; the parties are quite aware of the difference between promising to tender at a given time, and giving the charterer an option to cancel if the tender be not made by a specified day. We think that it would confuse all reasonable understanding to ignore so well marked a distinction.

The libelants at bar might indeed have re-

covered by showing that the respondent had not used all convenient dispatch in declaring a ship before November 11th. That would have proved a breach of its promise, a promise which must have some significance, if the contract is to be a contract at all. But the proof showed nothing of the kind; libelants relied only upon the supposed promise of the owner to tender by the cancellation date.

Decree affirmed.