### UNITED STATES GYPSUM TRANSP. CO. v. DAMPSKIBS AKTIESELSKABET KARMOY.

#### No. 11222.

District Court, E. D. New York.

Dec. 10, 1930.

Barry, Wainwright, Thacher & Symmers, of New York City (Earle Farwell, of New York City, of counsel), for libelant.

Haight, Smith, Griffin & Deming, of New York City (Clarence Bishop Smith, of New York City, of counsel), for respondent.

CAMPBELL, District Judge.

This is a suit for damages for alleged late delivery of a vessel under a charter party.

I find the facts to be as follows:

At all the times hereinafter mentioned, the libelant was and is a corporation organized and existing under and by virtue of the laws of the state of New York, and has an office at 17 State street, borough of Manhattan, city of New York, and the respondent, Dampskibs Aktieselskabet Karmoy, was and is a corporation organized and existing under the laws of the kingdom of Norway, and was and is the owner and operator of the steamship Karmoy.

The said respondent, Dampskibs Aktieselskabet Karmoy, had, at the time of the commencement of this suit, goods, chattels, and credits within this district and within the jurisdiction of this court, to wit, the steamship Karmoy, and this court has jurisdiction.

On or about the 17th day of May, 1926, the respondent, Dampskibs Aktieselskabet Karmoy, entered into a written charter party with the libelant for the charter of the steamship Karmoy, a copy of which charter is annexed to the libel herein, and among other things provided as follows:

"That the said Owners agree to let, and the said Charterers agree to hire the said Steamship from the time of delivery, for a period up to December 1st/31st in Charterers option. * * * Steamer to be placed at the disposal of the Charterers, at Windsor N. S. * * *"

"14. That if required by Charterers, time not to commence before June 1st, 1926 and should Steamer not be ready for delivery on or before June 25th, 1926 Charterers or their Agents to have the option of cancelling this Charter at any time not later than the day of Steamer's readiness."

In the said charter party the location of the steamship is described as "now trading."

The charter party was executed on behalf of the owner by "J. F. Whitney & Co., by Philip Stauderman, Brokers Agents. By cable authority. * * *"

The steamer Karmoy was not ready for delivery on or before June 25, 1926, and the charterer or its agent did not exercise its option and cancel the charter.

The steamer Karmoy was delivered to the charterer on August 7, 1926, and accepted by the charterer without objection, complaint, or reservation of a late delivery, and it was not until November 18, 1926, that the libelant wrote to said J. F. Whitney & Co., the brokers, protesting and stating it would claim damages.

The steamship Karmoy was returned by the libelant on December 2, 1926.

At the time, but before the charter was entered into, Mr. Stauderman, representing J. F. Whitney & Co., told Mr. King, secretary of the libelant, who executed the charter party on behalf of the libelant, that he did not have a ship available for delivery between the 1st and the 15th of June, but that, if he could extend his reporting date, delivery date, until June 25th, it would be absolutely sure that the Karmoy could be delivered, and the chances were it could be delivered earlier than that date.

At the same time Mr. Stauderman told Mr. King that the Karmoy was under charter to the Munson Line.

The owner used reasonable dispatch in tendering the ship.

The libelant, between June 25 and August 7, 1926, chartered other vessels at a higher rate.

We will now proceed to a consideration of the law applicable to this suit.

Libelant contends that respondent, by failing to tender the vessel between the 1st and 25th of June, 1926, committed a breach of the charter party:

First, on the ground that, although the charter party does not state in precise words that the vessel shall be at the loading port between those dates, there is an implied promise to deliver within the reporting time.

Such a construction not only would do violence to the very object sought to be accomplished by the use of the government form of time charter, that of protecting the owner, whose vessel is at the time of making under charter, from the liability which he would be under by promising delivery at any specific time, and protecting the charterer by giving him the right to cancel the charter if delivery is not made by a specified time, but would be at variance with the authorities. Sanday v. U. S. Shipping Board (D. C.) 1 F.(2d) 390, affirmed (C. C. A.) 6 F.(2d) 384, 42 A. L. R. 308, certiorari denied 269 U. S. 556, 46 S. Ct. 19, 70 L. Ed. 409. See, also, obiter remarks of Mathew and Smith, JJ., in Smith v. Dart & Son, 5 Asp. Maritime Law Cases, 360.

Libelant cites Hasler v. West India S. S. Co. (C. C. A.) 212 F. 862, as authority in support of its contention, but it seems to me to be clearly distinguishable, in that it was not a case where a charterer sued the ship for alleged late delivery, but was a case where a shipowner, without going to the port of delivery and tendering, sued the charterer for nonperformance; and, if more be required to show that it is not an authority in support of libelant's contention, then it will be found in Sanday v. U. S. Shipping Board, supra, 6 F.(2d) at page 385, where the court states:

"We are referred to our language in Hasler v. West India S. S. Co., supra, [212 F.] 863, looking to a contrary conclusion. The case involved nothing of the kind. The owner was suing for a breach without tender, which he asserted to have been excused by the charterer's conduct. Plainly nothing there decided could affect the right of a charterer to sue upon a supposed promise of the owner. At most the language relied upon was obiter, and if it must be construed as including a charter in which the owner makes no promise, except so far as is to be implied from an option to cancel, it must be regarded as inadvertent."

The charter party was a written instrument, and the conversation between Mr. King and the agent was merged in that instrument, and such conversation did not constitute a collateral agreement binding on the owner.

In any event, the conversation on the part of the agent did not amount to an agreement to deliver at a specified time, but only an expression of opinion as to the time when the ship would be available.

The most that can be required of the owner in a case like the one at bar, where

378

no delivery date is provided in the charter, is to tender with reasonable dispatch, and the burden of proof is on the libelant to show that the owner has not used reasonable dispatch in tendering the ship. Sanday v. U. S. Shipping Board, supra, 6 F.(2d) at page 385.

This libelant has not shown.

The Karmoy was under charter to the Munson Steamship Line, and this was known to the libelant when the charter in the instant suit was made, and the Karmoy was delivered to libelant by respondent with reasonable dispatch after she was redelivered to respondent, who had put forth its best efforts to effect such redelivery.

■■ Undoubtedly libelant had the right to accept the Karmoy and also sue to recover for damages, if any, which it might have suffered by failure to deliver the vessel with reasonable dispatch, but it could also waive late delivery by not objecting promptly, Bennett v. Lingham (D. C.) 31 F. 85; and it seems to me that to wait from August 7, 1926, to November 18, 1926, is far from objecting promptly, especially when you consider that the vessel was redelivered by the libelant to the respondent on December 2, 1926.

I therefore find as conclusions of law:

The charter in the case at bar did not by its terms promise that the vessel would be delivered by any specified date, nor did it by reason of any of its provisions imply a promise by the owner to deliver the vessel on or before any specified day, nor did the agent in his conversation with the charterer's representative enter into any oral collateral agreement to deliver the vessel by any specified day, but the most that was implied by the charter party was that the owner would use reasonable dispatch in tendering the vessel, which both parties then knew was under charter to the Munson Steamship Line.

The burden of proof that the owner did not use reasonable dispatch in delivering the vessel was on the libelant, and the libelant has not borne that burden.

The owner did use reasonable dispatch in delivering the vessel.

The charterer waived late delivery of the vessel, if any there was, by not objecting promptly.

The libelant has failed to show that it is entitled to any recovery against the respondent. The libel should be dismissed.

A decree may be entered dismissing the libel with costs.